BROWNE v. STECHER LITHOGRAPHIC CO.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. PLEADING—CONCLUSIVENESS OF ADMISSIONS.
    An issue as to defendant's liability for the part of plaintiff's claim which the answer admitted, could not be raised or submitted to the jury, although evidence was admitted which tended to show no liability whatever.

2. SAME—AMENDMENT TO CONFORM WITH PROOF.
    When evidence has been admitted, and an issue raised and submitted, as to defendant's liability for that portion of plaintiff's claim admitted by the answer, the answer cannot then be amended to conform to the proof.

3. APPEAL—RECORD—CONCLUSIVENESS.
    On appeal, pleadings will be considered in their original form, as they actually appear in the record, although it appears that an amendment was allowed.

Appeal from trial term.

Action by George W. Browne against the Stecher Lithographic Company. From a judgment entered on a verdict for defendant, and

from an order denying a motion for new trial, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

C. D. Kiehel, for appellant.

C. C. Werner, for respondent.

GREEN, J. This action was instituted for the purpose of recovering commissions alleged to be owing the plaintiff by the defendant under a contract made between them in the year 1887. Plaintiff alleges in the complaint that in and by such contract it was agreed, among other things, that the defendant should receive, fill out, manufacture, execute, and deliver all orders secured by plaintiff, and that defendant agreed with plaintiff to pay him commissions for all such orders, at a rate to be fixed by the parties, from time to time, during the life of the contract; that, pursuant to the contract, defendant received from the plaintiff, in and about the month of December, 1894, an order, given and made by the William S. Kimball & Co. branch of the American Tobacco Company, for manufacturing and delivering to it 10,000,000 parts of boxes, known as "Sweet Caporal Cigarette Shells," 2,500,000 known as "Old Gold Cigarette Shells," and 2,500,000 known as "Fragrant Vanity Fair Cigarette Shells"; and that defendant agreed to pay plaintiff a commission of four cents per 1,000 shells on the 10,000,000 Sweet Caporal shells, and three cents per 1,000 shells on the 2,500,000 Old Gold shells and on the 2,500,000 Fragrant Vanity Fair shells. It was further alleged by plaintiff in his complaint that, pursuant to said contract, the defendant received from plaintiff, in and about the month of December, 1894, another order, given and made to it by the American Tobacco Company, for the manufacturing and delivering of 1,000,000 boxes known as "Cameo Cigarette Boxes," to the Duke & Sons branch of the American Tobacco Company; and that the defendant agreed to pay to the plaintiff a commission of six cents per 1,000 boxes for such order so received by it. The plaintiff further alleged that, pursuant to said contract, the defendant received from plaintiff, in and about the month of November, 1894, another order, given and made by him to the American Tobacco Company, for the manufacturing and delivery of 500,000 boxes, known as "Old Dominion Cigarette Boxes," to the Allen & Ginter branch of the American Tobacco Company; and that the defendant agreed to pay to the plaintiff a commission of six cents per 1,000 boxes for such order so received by defendant. Defendant, by its answer, specifically admits all of these allegations of the plaintiff's complaint, and admits that it agreed to pay the plaintiff commissions therefor, as alleged in the complaint. There were other allegations in the complaint for commissions claimed by plaintiff to be due and owing to him from the defendant, upon other orders, pursuant to the contract. As to the allegations upon the latter orders, an issue was joined by denial thereof in the answer.

Under the pleadings, therefore, the plaintiff was entitled to recover, without proof before the jury, the amount of the commissions

so admitted by the answer. Upon the trial it appeared that the plaintiff was discharged from defendant's employment the latter part of December, 1894; that, after his discharge, plaintiff went to the defendant, and demanded the balance then owing to him. The defendant at that time insisted that the amount of the claim then made by him was too large, and that he was not entitled to commissions upon certain orders which had been taken by him, and delivered to the defendant; and the defendant made a written statement of the account between plaintiff and defendant, showing the balance owing by the defendant to the plaintiff at that time, as claimed by defendant. The statement is as follows:

Geo. W. Browne:

Wm. S. Kimball & Co.

| | | | |
|---|---|---|---|
| 10 MM. Sweet Caps, at 4c M | | | $400 00 |
| 2½ MM. Old Gold, 3c " | | | 75 00 |
| 2½ MM. Fragrant, 3c " | | | 75 00 |

Duke & Sons.

| | | |
|---|---|---|
| 1 MM. Cameo C. & S. 6c M | | 60 00 |

Allen & Ginter.

| | | |
|---|---|---|
| 500 M. Old Dominion, 6c M | | 30 00 |

|  |  |
|---|---|
|  | $640 00 |
| Less overdraw | 362 88 |
| Balance | $277 12 |

Upon the trial the defendant's president testified concerning this statement. He was shown the same, and was then asked this:

"Q. Whose handwriting is this paper that I show you now? A. That is Mr. Smith's. Q. Did you authorize that paper to be delivered to Mr. Browne? A. I did. Q. Wasn't that the sum total, $277.12, that you owed Mr. Browne? A. Yes, sir."

It appears, therefore, not only by the verified answer of the defendant, that it specifically admitted the indebtedness of at least $277.12 to the plaintiff at the time of the commencement of this action, but again, upon the trial, the president of the company testified that such was the fact. Notwithstanding this, the question as to whether the defendant was liable to the plaintiff for this balance was left to the decision of the jury. It appears that upon the trial the president of the defendant testified to a conversation with Mr. Browne concerning the commissions, as follows:

"I told Mr. Browne that we would make the terms of the commissions on each job as much as we could possibly afford to pay him; and I told him that the orders were so peculiar that we could not afford to pay him the commissions at the time when we took the orders; that we would pay him the commissions on those jobs when the orders were filled, and were finally completed and delivered."

The president of the defendant further testified to the effect that, in the event of the discharge of plaintiff, he was to receive no commissions after such discharge; and it was upon that evidence that the learned trial justice submitted the question to the jury as to whether the plaintiff was entitled to recover anything from the defendant, and, if he was entitled to recover anything, the amount. It

was admitted on the trial that all the orders had been filled and the goods delivered previous to the commencement of this action.

Immediately after the close of the charge, the plaintiff's attorney asked the court to charge that:

"The defendant is bound by his admissions in the answer in regard to the value of the commissions on the Kimball & Company and Duke & Company orders.

"The Court: The pleadings, both the answer and the complaint, are in evidence, and you may take the pleadings into consideration with all the other evidence of the case in rendering your verdict. (The plaintiff excepted to the refusal of the court to charge as requested, and to the charge as made.)"

Plaintiff's counsel also asked the court to charge the jury that the defendant is bound by the admissions in the answer. The court so charged. The jury rendered a verdict, in favor of the defendant, of no cause of action.

The verdict is clearly against the weight of evidence. The claim of the plaintiff to the extent of $277.12 was admitted by the verified answer of defendant, and was again admitted by the president of defendant, in his evidence upon the trial. The effect of admissions in the answer is clearly stated in the case of Paige v. Willett, 38 N. Y. 31:

"While the answer stood upon the record, the defendant was not at liberty to raise an issue which he had emphatically closed. * * * It is no answer to say that the plaintiffs have voluntarily gone beyond those admissions, and opened up an inquiry which the defendant was at liberty to pursue, and that this means escape from the effect of his own foreclosure. This may have been an unwise, as I think it was a very unnecessary, procedure on the part of the plaintiffs; but it does not help the defendant's case, nor enable him to avoid the effect of his own admissions. Such admissions are conclusive upon the parties litigant, and upon the court, and no countervailing evidence can properly be received; or if it is, either through inadvertence or by tacit consent, foisted into the case, it is entitled to no consideration. * * * Who formally and explicitly admits by his pleadings that which establishes the plaintiff's rights will not be suffered to deny its existence, or to prove any state of facts inconsistent with that admission."

After the case had been submitted to the jury, "the defendant's counsel asked to amend the answer to conform to the proof in the case," which was allowed over the plaintiff's objection and exception. When this amendment was permitted, the case had been fully tried and submitted to the jury, and it was then too late to grant an amendment affecting the issues tried. The case had been tried upon the theory of the pleadings, and it was then too late to change the answer. No formal amendment was proposed. There is nothing in the records to inform the appellate court of the nature, extent, or manner in which the answer was amended. No amendment was actually inserted therein; and, upon this review, the pleadings will be considered as they appear upon the record presented.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. So ordered. All concur.